**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SCF LEWIS AND CLARK FLEETING LLC, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 4:26-cv-00966 |
| GOLDSTEIN AND PRICE, L.C., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT FOR LEGAL MALPRACTICE
AND BREACH OF FIDUCIARY DUTY**

Plaintiff SCF Lewis and Clark Fleeting LLC ("SCF") for its Complaint for Legal Malpractice and Breach of Fiduciary Duty against Goldstein and Price, L.C. ("GP"), alleges as follows:

**THE PARTIES**

1. Plaintiff SCF is a Delaware limited liability company with its principal place of business in Granite City, Illinois. SCF provides integrated logistics and barge transportation services on inland waterways in the United States and abroad.

2. Defendant GP is a Missouri limited liability company engaged in the practice of law with its principal place of business in St. Louis, Missouri. GP promotes itself as successfully handling complex trial and appellate court matters in federal and state courts throughout the country.

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Neither SCF nor any of its members whose citizenship is attributable to SCF is a citizen of the state of Missouri. GP and all its members

whose citizenship is attributable to GP are citizens of the state of Missouri and none are citizens of states in which SCF or any of its members are citizens.  Accordingly, complete diversity of citizenship exists between the parties.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because GP resides in and is subject to the exercise of personal jurisdiction in this district.

**FACTUAL BACKGROUND**

A.      **GP's Representation of SCF**

5.      In 2018, SCF engaged GP as legal counsel to represent SCF in a lawsuit captioned *Kevin D. Mogensen v. SCF Lewis and Clark Fleeting LLC*, No. 2018 L 000985 filed in Madison County, Illinois (the "Mogensen Action").  The Mogensen Action alleged claims that Mogensen, a former employee of SCF, was injured while serving as a crewmember aboard one of SCF's towboats.

6.      Various members of GP entered their appearance as counsel of record for SCF in the Mogensen Action, including Neal W. Settergren, Jacob D. Curtis, Douglas E. Gossow and Giles B. Howard.

- Mr. Settergren serves as the law firm's managing member and according to the firm's website "is an experienced attorney in and out of the courtroom, handling a variety of maritime, commercial, and insurance matters for our clients."

- Mr. Curtis included in his firm biography at the time of engagement that "[w]hether handling litigation or counseling clients through complex insurance matters, Jake brings critical attention to detail and creative solutions to bear for the benefit of our clients."

- Mr. Gossow notes on the website that he "brings knowledge and a methodical approach to the table that can only be achieved through years of experience."

- Mr. Howard told clients and others on the firm's website at the time of engagement that "[w]hether navigating state or federal courts in a trial or appellate setting, Giles delivers sophisticated strategies that fit the needs of every client and situation."

7.     In preparing the responsive pleading to the complaint filed on behalf of SCF, GP's lawyers pleaded that SCF was not liable for Mogensen's injuries and presented a series of affirmative defenses that would have wholly or partially foreclosed any liability to or recovery by Mogensen if successfully presented.

8.     Consistently throughout the pretrial proceedings, GP advised SCF that SCF had viable and meritorious defenses to Mogensen's claims and that the value of the case was substantially less than the amounts sought by Mogensen.

**B.     GP's Invocation of Rule 615 and Subsequent Violation at Trial**

9.     Discovery and other pretrial matters proceeded in the Mogensen Action for over four years at substantial expense to SCF.

10.    On January 3, 2023, the trial court conducted a pretrial conference in the Mogensen Action in anticipation of a trial.

11.    Mr. Settergren and Mr. Curtis attended the pretrial conference as counsel to and on behalf of SCF.

12.    During the pretrial conference, Mr. Settergren addressed the Court on issues related to the exclusionary rule set forth in Illinois Rule of Evidence 615.

13.     Rule 615 provides "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion."

14.     At the pretrial conference, Mr. Settergren invoked Rule 615 as counsel to and on behalf of SCF:

**Mr. Settergren:**     **We would like to invoke Rule 615.  I didn't know if we needed to do that today or at trial.**

**Court:**     **You can do it whenever.**

**Mr. Settergren:**     **Okay.  We invoke Rule 615.**

15.     On January 3, 2023, counsel Mr. Settergren provided analysis of the rulings the trial judge made on evidentiary motions, stating no ruling caused him to change his assessment of the value of the claim.

16.     Trial of the Mogensen Action commenced the following Monday, January 9, 2023.

17.     Consistent with SCF's invocation of Rule 615, at the start of each trial day, and after breaks, the Court verified that no witnesses were present within the courtroom to ensure that the Rule 615 requirements were satisfied and complied with by the parties.

18.     Similarly, the Court also made inquiries about individuals seated in the gallery to ensure they were not potential witnesses before evidence was presented in their presence.

19.     Mr. Settergren and Mr. Curtis were present in the courtroom when the Court took such precautionary steps to exclude prospective witnesses from learning of the testimony of other witnesses.

20.     Every witness throughout the trial was excluded from the courtroom prior to testifying in the case.

21.     On January 12, 2023, SCF called Scott Keehner, Terminals Manager at SCF, to testify in SCF's case-in-chief.

22.     Mr. Curtis conducted Mr. Keehner's direct examination.

23.     Mr. Settergren was also in the courtroom during Mr. Keehner's testimony.

24.     During cross-examination of Mr. Keehner, Mogensen's counsel elicited the following testimony from Mr. Keehner:

> Q.     Mr. Keehner, did you speak with anyone prior to your testimony today that would have told you that the testimony thus far in this case has been that the product that was covered all over Kevin was a bright yellow?
>
> A.     Through the lawyers.
>
> Q.     The lawyers?
>
> A.     Um-hum.
>
> Q.     Told you what prior testimony was already today?
>
> A.     Yes.

25.     Following this exchange in open court, the jury was excused and the following exchange between Mr. Keehner and the Court occurred:

> Q.     I want to ask you a couple of questions then. You mentioned that you talked to the attorneys, in particular I'm asking you about the last couple of days that you indicated you talked to the attorneys. Tell me the last time you talked to the attorneys.
>
> A.     I talked to [Mr. Curtis] this morning.
>
> ***
>
> Q.     I'm going to ask you questions that are not related to the February 1st incident. So any of your answers I only want to know if he talked to you anything about this incident today.
>
> A.     Okay.
>
> Q.     Did you talk to Mr. Curtis about anything relating to today?

A.      Yes.

Q.      Can you tell me the nature of that conversation?

A.      I took it as a briefing, how to prep me for this. I mean, that's how I took it.

Q.      What time was this?

A.      Early in the morning, like six.

Q.      Did he give you any indication about any prior testimony that's been given in this case?

A.      Yes.

Q.      In this particular case?

A.      In this particular case?

Q.      Yes.

A.      Any testimony? Yes.

Q.      Can you tell me what he indicated to you?

A.      He just, you know, had told me that to answer everything to my ability of what I was going to be briefed on, and then in the testimony that they had brought up a color of orange had been effected, you know, through the testimony, which, you know, I told them that we didn't handle anything that was being pertained that was going to be discussed that was orange.

Q.      You're telling me, so I don't get it wrong, so you're telling me today that you spoke with Mr. Curtis, and he did indicate there was prior testimony in this trial, this trial, was that there was testimony regarding the color of the grain that plaintiff was exposed to?

A.      Yes.

26.     The cross-examination of Mr. Keehner and the Court's follow-up questioning of Mr. Keehner revealed that Mr. Curtis had communicated with and provided information to Mr. Keehner about evidence offered at trial before Mr. Keehner testified, despite SCF's prior invocation of Rule 615 (the "Improper Communications").

6

27.      The Improper Communications included the color of the grain dust at issue, a material and key fact in the Mogensen Action.

28.      After its examination of Mr. Keehner, the Court commented: "There is a very specific reason why parties invoke sequestration of witnesses, and there is a very particular reason why that rule is in effect. . . . There was a breach of the sequestration order that defendants requested, it was your own motion for the invocation of that, . . [T]his is a very severe violation . . . ."

29.      The Court concluded "[a]fter reviewing the case law in this matter, and after reviewing all of the testimony, especially the testimony of Mr. Keehner, I'm going to grant plaintiff's motion to strike the pleadings in this matter.  There will be a directed finding as to the allegations of negligence.  The jury will consider the issue of damages."

30.      As a direct result of GP's violation of Rule 615 arising from the Improper Communications conducted by Mr. Curtis, the Court struck the pleadings of SCF, including denials of all allegations of liability and multiple meritorious defenses.

31.      As a consequence, all disputed issues of liability and affirmative defenses pleaded by SCF were removed from the jury's consideration.

32.      The jury was subsequently instructed to render a verdict on only the issue of damages to be awarded to Mr. Mogensen.

33.      GP informed SCF of the sanctions resulting from GP's violation of Rule 615, but attempted to provide excuses for the violation and implied that it could mitigate the effects of the sanctions.

- On January 12, 2023, counsel Mr. Settergren wrote to SCF, "[t]he Court assented to our Rule 615 request, without any written order, thus barring most witnesses from the

7

courtroom during the testimony of other witnesses. Judge Smith, however, <u>never</u> entered an order barring attorneys, witnesses, or anyone else not to discuss trial testimony and the text of Rule 615 is silent on that subject."

- Counsel Mr. Settergren also wrote, "[u]pon learning that we had communicated with Keehner before his testimony today, Plaintiff's counsel argued that our speaking with Keehner this morning violated the Court's Rule 615 order. Without citing or consulting any cases, Judge Smith quickly agreed and granted Plaintiff's request for sanctions, striking SCF's pleadings. In short, this means that, if the Court does not reconsider its ruling and withdraw the sanction, the Court is going to find the Defendant negligent, but still allow us to argue to the Jury that Defendant did not *cause* any harm or damages to Plaintiff. Even if the Court proceeds with the sanction of striking SCF's pleadings, SCF will still be able to argue the key medical causation and damages issues in the case."

- Counsel Mr. Settergren wrote, "[s]ince the Court's ruling today, we have performed a search of Illinois law applying and interpreting Rule 615 in order to determine if there is legal support for the Court's ruling. We have also reviewed related Illinois common law holdings on the subject of the excluding of witnesses from the courtroom during trial. . . . We intend to present these cases to the Court tomorrow morning and will request that the Court reconsider its sanctions ruling. We feel strongly that the Court's ruling is based on a misunderstanding of Rule 615 and is contrary to law."

- Counsel Mr. Settergren also wrote, "[s]hould the Court not reconsider its ruling and thereafter a substantial adverse jury verdict is entered against SCF, we would recommend a prompt appeal."

34.     On January 12, 2023, after the trial court's adverse ruling against SCF that removed the question of negligence from the jury, counsel Mr. Settergren stated "[a]lthough the Court's ruling today somewhat diminished SCF's litigation position and did increase the risk to SCF, we still think that $750,000 is a very high price to pay for this claim, even if the Court does not reconsider its ruling tomorrow."

35.     On January 13, 2023, the jury returned a verdict against SCF in the amount of $3,310,000.00.

36.     A judgment was entered by the Court in accordance with the verdict.

**C.      Post-Trial Representation, Request for New Trial and Appeal**

37.     GP continued its representation of SCF after the verdict and entry of judgment.

38.     On March 13, 2023, GP filed a post-trial motion which sought a new trial on the basis that the trial court denied SCF a fair trial by, among other things, striking SCF's pleadings following disclosure of the Improper Communications.

- On January 16, counsel Mr. Settergren opined that it was not likely that the trial court would grant SCF a new trial.

- That same day, counsel Mr. Settergren provided analysis of what issues GP would argue on SCF's behalf on appeal, and provided a positive outlook in that regard, stating, "[i]f SCF is successful in securing a reversal on appeal—and we believe there are strong grounds for obtaining such an outcome. . ."

39.     Much of the hearing on the post-trial motion concerned whether the conduct sanctioned by the trial court – the Improper Communications with Mr. Keehner during the trial – violated Rule 615.

40.     The post-trial motion was denied on June 29, 2023.

41. GP, continuing as counsel to SCF, then filed a notice of appeal on July 13, 2023 to appeal the matter to the Appellate Court of Illinois for the Fifth Judicial District (the "Appeal"). Mr. Gossow and Mr. Howard were primarily involved in the representation of SCF in the Appeal.

42. The first point raised and a substantial portion of GP's briefing in the Appeal related to the Improper Communications and striking of SCF's pleading by the trial court.

43. In an Opinion issued on February 4, 2025, the appellate court affirmed the trial court in all respects, including the striking of SCF's pleadings because of the Improper Communications:

> In both cases relied on by the defendant [i.e., H.S.H. and *Smith*], the trial court's order was unclear or absent. Therefore, a directed verdict as a sanction was overly harsh. That is not the case here, where the defendant violated its ***own motion*** and where ***the motion*** was clear and concise. The court merely granted a motion made by the defendant. The court's order was not unclear. The defendant moved on the record to invoke Rule 615, and the court granted their motion. It is illogical for the defendant to now argue that the scope of ***its motion*** was unclear or ambiguous. When the defendant subsequently violated its ***own motion***, the court responded with sanctions in the form of a directed verdict. Based on the facts and our review of the record, we cannot say that the trial court's sanction of striking the defendant's pleadings was an abuse of discretion, as the defendant violated its ***own motion***.
>
> As to whether the plaintiff was unduly surprised or prejudiced by the defendant's communication with Keehner, we note that the defendant has cited no authority addressing these arguments. Therefore, this is not an issue before this court, and any lack of surprise or prejudice is not grounds for reversal.

44. In sum, the appellate court held: (1) [SCF] "violated its own motion;" (2) the scope of [SCF's] Rule 615 motion was "clear and concise;" (3) because [SCF's] motion was clear and concise, the trial court's sanction of striking [SCF's] pleadings was not overly harsh; and (4) lack of prejudice to Mogensen was irrelevant to the issue raised.

10

45.     GP acted as counsel for and on behalf of SCF in the entire Mogensen Action through the issuance of the Opinion by the appellate court and a subsequent request for rehearing which was denied on February 26, 2025.

**D.      GP's Conflict of Interest**

46.     The Improper Communications by GP contributed materially and directly to SCF's pleadings being struck by the trial court.

47.     Absent the Improper Communications, SCF's pleadings were not subject to challenge and would not have been stricken.

48.     GP's actions at trial and participation in the Improper Communications caused the striking of SCF's responsive pleading and the entry of judgment against SCF.

49.     GP's actions at trial and participation in the Improper Communications immediately gave rise to a personal interest conflict of interest between GP and its client SCF (the "Prior Work Conflict").

50.     GP had a duty to fully and immediately disclose the Prior Work Conflict to SCF upon engaging in the Improper Communications and thereafter. GP failed to advise SCF of the Prior Work Conflict or recommend that SCF consult independent counsel about GP's conduct and errors during trial and appeal related to the Improper Communications.

51.     Instead, GP chose to promote its own interests over those of SCF by continuing its representation of SCF at trial and on appeal.

52.     Such intentional, improper and self-serving conduct by GP has continued as evidenced by GP's conflicted conduct in now suing affiliates of SCF.  For example, GP filed the action captioned *Dakota Garner v. Ingram Barge Company LLC,* Case No. 2026LA000176 in the Circuit Court of St. Clair County, Illinois **against** Ingram Barge Company LLC, an affiliate of SCF and prior client of GP, alleging personal injury claims on behalf of plaintiff as an employee of

11

defendant who claims he was injured while serving as a crewmember aboard an inland river towing vessel (the "Conflicted Action").

53. GP did not seek and Ingram Barge Company LLC did not grant a waiver of conflicts with respect to conflicts of interest arising from the representation of plaintiff in and the filing of the Conflicted Action.

54. GP billed and received payment of more than $600,000 in attorneys' fees and expenses thereby enriching it and its members at the expense of SCF.

**E.      Petition to Appeal to Illinois Supreme Court**

55. On April 2, 2025, SCF filed a Petition for Leave to Appeal the Mogensen Action to the Supreme Court of Illinois (the "Petition to Appeal").

56. SCF's Petition to Appeal was denied on May 28, 2025.

57. SCF paid the judgment plus post-judgment interest in full on May 30, 2025.

## FIRST CAUSE OF ACTION

### (Legal Malpractice)

58. SCF repeats and incorporates by this reference each and every preceding allegation as if fully set forth herein in paragraphs 1-57.

59. At all relevant times, GP agreed to and did provide SCF with legal representation, services and advice concerning the handling of the Mogensen Action, including with respect to the pretrial, trial and Appeal in the case.

60. At all relevant times, an attorney-client relationship existed between SCF and GP.

61. In so agreeing and doing, GP assumed various obligations and duties to SCF, including to provide competent professional legal services, to provide timely and accurate advice, and to take all necessary and appropriate steps to ensure that SCF's interests were protected in providing legal representation with respect to the Mogensen Action.

12

62.    In providing legal services to SCF, GP had a duty to provide and utilize the skill, training, and expertise of a reasonably prudent lawyer providing similar legal services.

63.    GP further had a duty to represent SCF consistent with the expected standard of care, skill and expertise.

64.    GP further had a duty to know the rules of civil procedure and rules of evidence applicable to the defense of the Mogensen Action and to follow and comply with such rules in all respects.

65.    GP further had a duty to identify and bring to SCF's immediate attention any violations of the rules of civil procedure and rules of evidence attributable to SCF and GP in the handling of the Mogensen Action, including with respect to GP's participation in the Improper Communications.

66.    GP further had a duty to fully explain to SCF the actual or potential consequences of engaging in the Improper Communications after invoking Rule 615, including that SCF could be sanctioned and its pleading struck by the Court.

67.    GP further had a duty to fully explain the existence and consequences of the Prior Work Conflict after GP engaged in the Improper Communications and thereafter.

68.    SCF reasonably relied upon GP to protect SCF's interests, provide proper and competent advice consistent with the accepted standard of care, and take all reasonable and appropriate steps to ensure: (i) that SCF and GP fully complied with the applicable rules of civil procedure and/or rules of evidence, including Rule 615, in representing SCF in the Mogensen Action; (ii) that GP fully and properly conducted the preparation and examination of trial witnesses consistent with Rule 615 after GP invoked that rule as counsel to SCF; (iii) that GP would not engage in conduct during trial that resulted in the striking of SCF's pleading and the elimination

13

of SCF's ability to challenge issues of liability or to present affirmative defenses at trial; and (iv) that GP would explain and advise SCF about the Prior Work Conflict and recommend that SCF consult independent counsel about GP's conduct and errors during trial and the appeal related to the Improper Communications.

69.     GP breached its duties and failed to exercise reasonable care and skill and failed to meet the expected standard of care in undertaking to provide legal representation and services to SCF. Among other things, GP: (i) violated applicable rules of civil procedure and/or rules of evidence, including Rule 615, in representing SCF in the Mogensen Action; (ii) prepared and examined trial witnesses in violation Rule 615 after GP invoked that Rule 615 as counsel to SCF; (iii) engaged in conduct during trial that resulted in the striking of SCF's pleading and the elimination of SCF's ability to challenge issues of liability or to present affirmative defenses at trial; and (iv) failed to explain and advise SCF about the Prior Work Conflict and recommend that SCF consult independent counsel about GP's conduct and errors during trial and the appeal related to the Improper Communications.

70.     GP's breach of duties to SCF directly caused harm to SCF.

71.     GP's Improper Communications with trial witnesses was the reason that SCF's pleadings were struck by the trial court and SCF's inability to defend the liability claims in the Mogensen Action.

72.     But for GP's actions, (i) SCF's pleading would not have been struck, nor would liability have been directed against SCF by the trial court; (ii) SCF would not have been prevented from presenting its affirmative defenses; and (iii) SCF would not have suffered damages arising from the Mogensen Action.

73.     The legal representation and services provided by GP and its related actions failed to meet the accepted standard of care and constituted legal malpractice.

74.     As a direct and proximate result of GP's actions and breaches of its duties, SCF had a judgment entered against and SCF suffered actual harm and damages not less than the amount of the judgment paid by SCF plus the attorneys' fees and expenses paid to GP in connection with the Mogensen Action.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

75.     SCF repeats and incorporates by this reference each and every preceding allegation as if fully set forth herein in paragraphs 1-57.

76.     At all relevant times, as attorneys for SCF, GP owed fiduciary duties to SCF to faithfully and loyally represent the interests of SCF in providing legal representation and services in the Mogensen Action, including duties to: (i) protect SCF's interests and provide advice and take actions consistent with that of a reasonably prudent lawyer providing similar legal services; (ii) put the interests of SCF first, hold those interests paramount and to avoid conflicts of interest between GP and SCF; (iii) act within the scope of the law and never to act outside it in representing SCF; (iv) act with the highest degree of professionalism and caution; (v) take all actions in representing and on behalf of SCF consistent with the best interests SCF and in the utmost of good faith: and (vi) be transparent and communicative with SCF throughout the representation.

77.     GP held a superior knowledge, skill and expertise over SCF with respect to the discharge of GP's responsibilities and duties, including with respect to pretrial, trial and appellate matters, the applicable rules of civil procedure and rules of evidence applicable to the Mogensen Action and the invocation of and compliance with Rule 615 .

15

78.      GP breached its fiduciary duties to SCF by: (i) violating applicable rules of civil procedure and/or rules of evidence, including Rule 615, and thereby failing to protect SCF's interests and provide advice and take actions consistent with a reasonably prudent lawyer providing similar legal services; (ii) preparing and examining trial witnesses in violation Rule 615 after GP invoked that Rule 615 as counsel to SCF and thereby failing to act within the scope of the law in representing SCF; (iii) engaging in conduct during trial that resulted in the striking of SCF's pleading and the elimination of SCF's ability to challenge issues of liability or to present affirmative defenses at trial and thereby failing to put the interests of SCF first; and (iv) causing a conflict of interest to develop between GP and SCF by engaging in the Improper Communications and continuing with GP's representation of SCF thereby placing its interests before those of its client, SCF.

79.      As a direct and proximate result and as a substantial factor of GP's breach of its fiduciary duties to SCF, SCF suffered harm, including but not limited the striking of its pleadings in the Mogensen Action and the deprivation of the ability to fully defend itself in that action all resulting in the entry of a multi-million dollar judgment against SCF.

80.      As a direct and proximate result and as a substantial factor of GP's actions and breaches of its duties, SCF had a judgment entered against and SCF suffered actual harm and damages not less than the amount of the judgment paid by SCF plus the attorneys' fees and costs paid to GP in connection with the Mogensen Action.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

81.      SCF repeats and incorporates by this reference each and every preceding allegation as if fully set forth herein in paragraphs 1-57.

16

82.     SCF paid GP fees and expenses totaling in excess of $600,000 in connection with the Mogensen Action.

83.     It would be inequitable and unjust to allow GP to retain the fees and expenses paid to it in connection with the Mogensen Action in light of GP breaches of multiple duties and undisclosed conflicts of interest.

84.     The services provided by GP failed to comply with GP's duties and the applicable standard of care.

85.     The services provided by GP actively harmed SCF by causing its defenses to be stricken during trial thereby causing a multi-million dollar judgment to be entered against SCF.

WHEREFORE, SCF prays for judgment as follows:

1.     Awarding compensatory damages in an amount according to proof;

2.     Ordering GP to disgorge all fees and expenses paid to GP in connection with the Mogensen Action;

3.     Awarding prejudgment interest to the extent permitted by law;

4.     Awarding costs of suit and attorneys' fees;

5.     Granting such further relief as may be appropriate.

## JURY TRIAL DEMAND

SCF demands a jury trial in this action.

17

Dated: June 18, 2026

SHOOK, HARDY & BACON L.L.P.

By: *Jennifer J. Artman*

Jennifer J. Artman, 63692 MO
Todd W. Ruskamp 38625 MO (admission
application pending)
2555 Grand Blvd.
Kansas City, Missouri 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
jartman@shb.com
truskamp@shb.com

Cathleen S. Aubuchon, 69946 MO
190 Carondelet Plaza, Suite 1350
St. Louis, Missouri  63105
Telephone: (314) 690-0200
Fax: (314) 690-0249
caubuchon@shb.com

*Attorneys for Plaintiff SCF Lewis and Clark
Fleeting LLC*